**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Duane Douglas HOUSTON,**
**Defendant–Appellant.**

No. 93–2026.

United States Court of Appeals,
Tenth Circuit.

April 20, 1994.

James R. Scarantino, Albuquerque, NM, for defendant-appellant.

David N. Williams, Sr. Litigation Counsel (Don J. Svet, U.S. Atty., and Rhonda P. Backinoff, Asst. U.S. Atty., on the brief), Albuquerque, NM, for plaintiff-appellee.

Before MOORE, FEINBERG,* and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant Duane Douglas Houston entered a conditional guilty plea to charges of possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). He now appeals the district court's denial of his motion to suppress evidence seized from his luggage following an encounter with Drug Enforcement Agency (DEA) officers aboard a train stopped in Albuquerque, New Mexico.

We abated this appeal pending the court's in banc decision in *United States v. Little,* 18 F.3d 1499 (10th Cir.1994) (en banc), and now affirm.

## BACKGROUND

On May 6, 1992, DEA agents Samuel Candelaria and James Torres received information that two individuals aboard the Amtrak train due to arrive in Albuquerque from Flagstaff had made reservations the night before and had bought tickets with cash just prior to the train's departure, one for a private roomette and one for a coach seat. Agent Candelaria obtained a copy of the reservation, which was in the name of Duane Douglas, and which had a call-back telephone number which, when Candelaria called it, was disconnected.

From the descriptions provided by the informant, agents Candelaria and Torres were able to identify the two individuals when the train arrived. They observed the two men, Houston and his traveling companion, leave the train and go to a pay telephone on the train platform, from which Houston, after removing a wallet from his pocket, placed a telephone call. Agent Torres was close enough to overhear the conversation, in which Houston apparently called someone with a pager, told the listener when he would arrive in Chicago and asked to be picked up.[1] While Torres was observing Houston, Agent Candelaria walked past Houston's private roomette on the train and saw a large suitcase inside the roomette.

After Houston returned to his roomette, Torres went to the roomette, stood to the side of the open door and identified himself to Houston. He asked permission to speak to Houston and, when Houston consented, proceeded to ask a series of questions. Torres asked if Houston was traveling by himself and Houston said he was. Upon request, Houston produced his ticket with the name Duane Douglas on it. When asked for a picture ID, Houston said he had no identification on him. Torres then asked him

---

* The Honorable Wilfred Feinberg, Senior Circuit Judge, United States Court of Appeals, Second Circuit, sitting by designation.

1. Phone records indicate that the call was placed to Ontario, Canada.

if he was carrying any contraband or narcotics, to which Houston responded negatively, upon which Torres asked if he could search his luggage. Houston refused to give consent to search the luggage. When asked if he would consent to having a dog sniff the luggage, Houston responded "I guess, I don't know." Tr. of Tape, Appellee's Br.App.A. Torres asked Houston how long ago he had made his reservations, and he responded "[a] few days ago." *Id.* When asked if there was a phone number on his reservation, Houston responded "it should be on the ticket" and then, when asked for his phone number, gave a phone number different from the number on the ticket. *Id.* When pressed by Torres, Houston continued to refuse consent to have a dog sniff his luggage.

At that point, Torres told Houston he was going to take his luggage and subject it to a dog sniff, because he believed it contained contraband based on: the fact that Houston had said he had made his reservations a few days ago when Torres knew he had in fact made them the day before; the difference between the phone number on the ticket and the phone number Houston gave him; and his claim that he was traveling alone when Torres knew he was traveling with another man. Throughout the encounter, other passengers passed back and forth in the aisle in which Torres stood.

Houston accompanied his luggage to the public area of the train, where a dog alerted to the large suitcase. The agents obtained a search warrant and found approximately 54 pounds of marijuana. Houston's motion to suppress the marijuana was denied, he entered a conditional plea of guilty and now appeals the denial of his suppression motion.

## DISCUSSION

■ When reviewing the denial of a motion to suppress, we review the district court's factual findings under the clearly erroneous standard. *United States v. Little,* 18 F.3d 1499, 1503 (10th Cir.1994) (en banc); *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994). We review de novo the ultimate determination of reasonableness under the Fourth Amendment. *Little,* 18 F.3d at 1503.

The district court held that the officers had articulable suspicion both to briefly detain and question Houston in his roomette, and to subsequently briefly seize and detain his luggage to submit it to a dog sniff. We hold that articulable suspicion was not required to question Houston in his roomette, as the encounter was consensual under *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), and our cases interpreting *Bostick.* We further hold that articulable suspicion to briefly detain Houston and his luggage developed during that consensual encounter. We therefore affirm the denial of Houston's motion to suppress.

■ To determine whether a police-citizen encounter is consensual or not "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* 501 U.S. at ——, 111 S.Ct. at 2389; *see also Little,* 18 F.3d at 1503. As we observed in *Little,* the test is both objective and fact-specific. *Little,* 18 F.3d at 1503. No single factor dictates whether a seizure has occurred.

We hold that the encounter between Houston and Torres was consensual. Torres alone approached Houston's roomette, the door to which was open. He was in plain clothes, did not display a weapon, and briefly examined and returned Houston's ticket. Houston has not argued that Torres' demeanor or tone of voice were threatening or coercive, or that Houston did not understand Torres' questions. Torres asked Houston a series of routine questions, during which Houston specifically refused consent to a search of his luggage. Under these circumstances, a reasonable person would have felt free to decline Torres' requests or otherwise terminate the encounter. *See United States v. Zapata,* 997 F.2d 751, 756–57 (10th Cir. 1993); *United States v. Laboy,* 979 F.2d 795, 799 (10th Cir.1992).

Houston argues that, even if the encounter between Torres and Houston did not implicate the Fourth Amendment, Torres did not develop articulable suspicion to seize Hous-

ton's bag and subject it to a dog sniff. He argues that the district court made no findings about the bag itself, other than the fact that an officer had observed the large bag in the small roomette, and any suspicions Torres may have had about Houston himself are not automatically transferable to the bag. We disagree.

■ A law enforcement officer may seize and briefly detain a traveler's luggage if the "officer's observations lead him reasonably to believe that [the] traveler is carrying luggage that contains narcotics." *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *see also United States v. Hall,* 978 F.2d 616, 620 (10th Cir. 1992). In determining whether the officer had a reasonable suspicion, we consider the totality of the circumstances to see if the officer had a "minimal level of objective justification," something more than an "inchoate and unparticularized suspicion or hunch." *Hall,* 978 F.2d at 620; *see also United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). We hold that reasonable suspicion to detain both Houston and his bag developed during the encounter between Torres and Houston.

■ As the district court found, Houston "made statements [to Torres] which added to a string of untruths." R.Vol. II, Tr. of Mo. Hr'g. at 99. Houston first said he was traveling alone; he later admitted, and Torres already knew, that he had a traveling companion. There was a discrepancy, which Torres also knew about, between the disconnected phone number on Houston's reservation and the phone number he gave Torres. Additionally, the district court noted that Torres had observed Houston with a wallet, yet Houston told Torres that he had no identification. There is no evidence that these factual findings by the district court were clearly erroneous. Additionally, al-

though the district court made no factual finding on this point, the evidence is undisputed that Torres knew that Houston's reservation had been made the day before, whereas Houston told Torres it had been made a few days ago.

This "string of untruths" provided Torres with articulable suspicion to briefly detain Houston and his luggage to investigate them further, which the officers promptly did by subjecting Houston's luggage to a dog sniff. *See Sokolow,* 490 U.S. at 8–9, 109 S.Ct. at 1585–86 (payment of cash for airplane tickets, traveling under an alias, and traveling from Honolulu to Miami and back in the space of three days provided articulable suspicion to briefly detain traveler and subject luggage to dog sniff).[2]

For the foregoing reasons, we AFFIRM the district court's denial of Houston's motion to suppress.

---

**2.** Houston's attempt to completely separate himself from his luggage is unavailing. First, in most cases the traveler himself engages in suspicious activity—paying for a ticket with an unusually large amount of cash as in *Sokolow,* traveling under an alias, lying about some aspect of himself or his travel—all of which is often not directly related to his luggage, yet which can provide articulable suspicion to briefly detain the

luggage. Second, the criminal activity officers suspect is drug smuggling, which is commonly accomplished by means of luggage capable of transporting large amounts of contraband. Thus, the traveler's behavior will frequently provide reasonable suspicion to detain both the traveler and his luggage, even though the luggage alone, separated from its owner's behavior, may not seem suspicious.