UNITED STATES of America,
Plaintiff–Appellant,

v.

Maurice McCURDY, Defendant–Appellee.

No. 94–2044.

United States Court of Appeals,
Tenth Circuit.

Nov. 21, 1994.

**1112**

Louis M. Fischer (John J. Kelly, U.S. Atty., and Presiliano A. Torrez, Asst. U.S. Atty., D. of N.M. with him on the briefs), Dept. of Justice, Washington, DC, for plaintiff-appellant.

Judith A. Rosentstein, Asst. Federal Public Defender, Albuquerque, NM, for defendant-appellee.

Before MOORE and BARRETT, Circuit Judges, and ROGERS *, District Court Judge.

BARRETT, Senior Circuit Judge.

The United States (government) appeals from the orders of the district court granting Maurice McCurdy's (McCurdy) motion to suppress certain statements and physical evidence and denying its motion for reconsideration.

### Facts

On October 1, 1993, officers of the United States Forest Service received information from a hunter that he had found a marijuana plantation in a remote area of the Santa Fe National Forest. Several days later, Forest Service Officer John Dickerson (Dickerson) and Deputy Sheriff Kenneth Morris (Morris) located the site. Both officers drew their weapons while surveying the site. They observed a backpack on the ground near some gardening and pruning tools and a note written on cardboard. The note read, "I see both of you. I know who you are. I was here when you came in. I have worked very hard at this work, please do not rob me or bust me. Thank you." (R., Vol. II at 26–7).

The officers then observed an individual, later determined to be McCurdy, dressed in camouflage pants, boots, and no shirt, walking up to the site. Morris ordered McCurdy not to move, to raise his hands, and to turn around in a circle. Morris then patted McCurdy down for weapons. After determining that McCurdy was not armed, Morris and Dickerson holstered their weapons and asked McCurdy for identification. McCurdy responded that his identification was in his truck.

Dickerson radioed his office and notified Senior Special Forest Service Agent Benjamin Tafoya (Tafoya), a criminal investigator, that they had a person at the site and that they needed some assistance in questioning him. McCurdy waited with Dickerson and Morris for approximately three hours until Tafoya arrived. While they were waiting, McCurdy told the officers that he had been hiking in the area, that he had no knowledge of the site and that he had no interest in the backpack. During this time, neither Morris nor Dickerson advised McCurdy of his *Miranda*[1] rights nor did they tell him that he was free to leave or that he was not free to leave.

When Tafoya arrived he questioned McCurdy, without first advising him of his *Miranda* rights, relative to the site and the backpack. McCurdy, in response to Tafoya's

---

* The Honorable Richard D. Rogers, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) holds that the prosecution may not use statements stemming from the custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Under *Miranda,* before any custodial interrogation, a defendant must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, that he has the right to the presence of an attorney, either retained or appointed, and that if he cannot afford an attorney, one will be provided for him.

specific questioning, again denied any knowledge of the site and any ownership in the backpack. Tafoya then opened the backpack and observed a headset and several camouflage shirts. According to McCurdy, who stands 5'5" and weighs 115 pounds, Tafoya was aggressive and threatening. McCurdy testified that Tafoya twice shoved him to the ground, and that Tafoya terrified him when Tafoya threatened to "come down real hard" on him if he did not admit his association with the plantation. Tafoya denied pushing McCurdy down.

McCurdy subsequently led Tafoya and Morris through the dense forest to his truck. During portions of the walk to the truck, Tafoya held onto one of McCurdy's belt loops. Once at the truck, Tafoya retrieved McCurdy's wallet and shirt from underneath the seat. Tafoya also retrieved a box which contained a photo of a headset resembling the headset found in the backpack. After seeing the photo, Tafoya turned toward McCurdy and McCurdy said something like "bingo." McCurdy then stated, "Okay, I'm the one that is responsible for everything. No one else is up there. I don't [sic] think you'd believe me." (R., Vol. II at 65). Immediately thereafter, McCurdy was handcuffed and advised of his *Miranda* rights. McCurdy and Tafoya then walked back to the site, during which time McCurdy gave Tafoya a full statement about the site.

The parties agree that McCurdy was in custody for purposes of *Miranda* from the time Dickerson and Morris initially detained him.

### Motion to Suppress

Prior to trial, McCurdy moved to suppress all of the statements made to the officers as well as any physical evidence removed from his truck on the grounds that "the statements were obtained in violation of Defendant's Fifth Amendment rights and that the evidence was seized in violation of his Fourth Amendment rights." (R., Vol. I, Tab 19 at 1).

Within his motion, McCurdy alleged, *inter alia*, that: after his initial encounter with Morris and Dickerson, he was ordered to remain in the area until Tafoya arrived; he was guarded by Morris who related that he could not leave; Tafoya twice shoved him to his knees; he did not believe he was free to leave; he believed that he had to cooperate with the officers; he led Tafoya and Morris to his pickup where Tafoya grabbed his keys and proceeded to unlock the truck and search inside; at some point during the search, Tafoya requested permission to search, but he responded that since Tafoya was already searching he had no choice but to allow him to continue searching; he was not informed that he had the right to refuse permission to search; and he made certain incriminating statements after Tafoya located a box containing a photo of a headset similar to the one found at the marijuana site.

McCurdy's motion to suppress argued that: he was clearly in custody and was prevented from leaving the site after he was initially questioned; any statements he made while in custody and prior to being advised of his *Miranda* rights were inadmissible; the warrantless, non-consensual search of his vehicle violated his Fourth Amendment rights; the statements made after his formal arrest and *Miranda* warnings were inadmissible as fruits of the poisonous tree; the statements made after his formal arrest and *Miranda* warnings were not voluntary and should be suppressed; the officers did not have probable cause to arrest him and search his vehicle prior to his incriminating statement; and, his consent to the search of his truck was not voluntary.

### District Court's Ruling

Following a hearing, the district court granted McCurdy's motion to suppress. In so doing, the court found:

> The Court: We've got the officers who were tipped off to the marijuana. So they go out there and finally find it, a very remote area, totally remote. Not a place where hikers go. No question about that.
>
> All right. Then they see ... they find the grow and they see this sign....
>
> Well, to my way of thinking, when the defendant then arrives on the scene, the officers have that, and they in essence, have a confession from him that its his

grow. They're way out in no place. They probably had probable cause to arrest at that time.

I don't have to reach that point. He gets there. They say, "Hold up your hands." They have their guns out, pat him down, all of which is all right. They ... ask him if he had any associates. There's no doubt in their mind ... they thought they had the person with the grow.

I don't see how you can now say that this is not custodial in the sense of *Miranda,* because they have him, they make him sit for three hours. I'm going to find that everything he said after Agent Tafoya got there is certainly to be suppressed. I've got nothing in front of me that says they would have ever found the truck. Had they found the truck, then they could have inventoried the truck and they would have found all of this. But I don't have anything in front of me that says they would have found the truck.

... I can't say that they would have ever found the truck and had an opportunity to search that. The only question I really have in my mind is when the officers said, "Either we're going to detain you or would you stay around to talk to the other fellow," is that he then said, "Well, I could see why you would want to do it, to detain me." Obviously, that's incriminating. Seems like to me that he was in actual custody for *Miranda* purposes prior to that time.

I'm going to suppress that also.

\*      \*      \*      \*      \*      \*

I'm going to suppress what was found in the truck, only on the basis that there's nothing before me that would say they would have ever found the truck.

So from the time he starts talking, I'm going to suppress it.

(R., Vol. II at 121–23).

Thereafter, Assistant United States Attorney Torrez asked the court to make a finding as to whether or not McCurdy consented to the search of his vehicle:

Mr. Torrez: I'm asking the court to make a finding whether or not he consented to the search of his vehicle....

If the court finds that he consented ... you don't get the items in the vehicle suppressed because that's a ... Fourth Amendment issue as opposed to a Fifth Amendment issue, and I think that the court has to make a separate finding as to whether the Fourth Amendment has been violated here....

The Court: The interplay between the Fourth and Fifth, when he's not Mirandized, he's not totally and doesn't have to make a statement, how can I then say that you don't have to make any statement, but we want you to lead us down to the car. It's still, to me, fruit of the poisoned tree....

Mr. Torrez: But it's a different inquiry for consent ...

The Court: I know that. And I believe it spills over into that inquiry. I'm going to suppress it all.

... he should have been Mirandized at that time, made aware of all of his rights.

\*      \*      \*      \*      \*      \*

Mr. Torrez: ... And I'd ask the court make that finding [that McCurdy consented to the search of his truck] ... despite the violation of *Miranda,* that it was, in fact, a voluntary statement.

The Court: I think no doubt that once he got down there to the truck that what he said was pretty freely and voluntarily given. But I can't say that since he wasn't Mirandized at the right time ... for all I know, he wouldn't have said anything. I'm not going to make that finding for you. This case was not handled correctly. You're asking me to set it up for you, and I'm not going to make that finding for you.

(R., Vol. II at 125–26).

The government subsequently filed a motion for reconsideration. During the motion hearing, the following colloquy occurred between Torrez and the court:

Mr. Torrez: ... there's a dispute on the consent issue....

\*      \*      \*      \*      \*      \*

I'd like the court to make a finding that the police officers received his permission,

that he said, despite the *Miranda* violation, that they received his permission to get in that vehicle.

The Court: ... that has no merit either way, because the failure to Mirandize him was of such a gross nature that anything else he did is out. It's all fruit of the poisoned tree....

\*   \*   \*   \*   \*   \*

Mr. Torrez: ... as the court has said, there is an arrest, but that it was a lawful arrest based—because the court finds there was sufficient factors and there was probable cause, I'm asking the court to also find if it was a *Miranda* violation as opposed to a due process violation. A due process violation would be something where the police conduct, they put a gun to his head.

The Court: No.

Mr. Torrez: So then all we have is a *Miranda* violation.

The Court: Failure to Mirandize him; correct.

\*   \*   \*   \*   \*   \*

Mr. Torrez: Okay. So then the court is, based on the *Miranda* violation, suppressing the intervening statements, the statements of Tafoya and the physical evidence.

The Court: That's right.

Mr. Torrez: Okay.

\*   \*   \*   \*   \*   \*

Mr. Torrez: And ... just so the findings will be clear, the Court is refusing ... does not believe that we've reached the issue of the consent on the truck.

The Court: That's correct.

Mr. Torrez: If we were to reach the issue on the consent to the truck, based on the totality of the circumstances and search of the truck, would the court find that it was a voluntary consent?

The Court: No, I won't ... there is no way I can put myself in his mind to know what he would have done had he been told

all of this two and a half, three and a half hours before....

(R., Vol. II at 139–42).

### Issues

On appeal, the government does not argue for the admissibility of the statements McCurdy made prior to the time he received his *Miranda* warnings. Rather, the government contends that the court erred in granting McCurdy's motion to suppress the statements he made after receiving the *Miranda* warnings and the physical evidence the officers found in his pickup truck.

■ In reviewing the denial of a motion to suppress, we accept the trial court's findings of fact unless they are clearly erroneous. *United States v. Girolamo*, 23 F.3d 320, 326 (10th Cir.1994). However, we review de novo the "ultimate determination of Fourth Amendment reasonableness." *United States v. Little*, 18 F.3d 1499, 1503 (10th Cir.1994) (quoting *United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir.1993)).

The fifth amendment "does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579–80, 48 L.Ed.2d 39 (1976) (emphasis in original). For example, the "[d]isclosure of name and address is essentially a neutral act," and "it would be the 'extravagant' extension of the privilege Justice Holmes warned against to hold that it is testimonial in the Fifth Amendment sense." *California v. Byers*, 402 U.S. 424, 431–32, 91 S.Ct. 1535, 1539–40, 29 L.Ed.2d 9 (1971). Moreover, one's identification would inevitably be discovered via fingerprints, dental records or other nontestimonial evidence.

a.

■ The government acknowledges that McCurdy was in custody for Fifth Amendment purposes when Dickerson and Morris initially detained him and that the officers' failure to Mirandize him at that time mandated the suppression of the statements he

made prior to being Mirandized. It seems clear that the investigation was no longer a general inquiry into an unsolved crime after McCurdy was taken into custody; the focus was on him. *See Escabedo v. Illinois,* 378 U.S. 478, 490–91, 84 S.Ct. 1758, 1764–65, 12 L.Ed.2d 977 (1964). The government argues, however, that the officers' failure to Mirandize McCurdy at the time he was initially detained did not require the suppression of McCurdy's statements made after he was formally arrested and Mirandized.

McCurdy responds that his statements "acknowledging ownership of the truck, indicating where the truck was, permitting Tafoya to search his truck and confessing responsibility for the marijuana plantation, were all obtained in violation of *Miranda,*" (Appellee's Answer Brief at 20), and that the court properly suppressed both his pre- and post-*Miranda* statements.

Our analysis begins with *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In that case, defendant Elstad was picked up at his home as a suspect in a burglary. He made an incriminating statement prior to the time the officers apprised him of his rights under *Miranda.* After Elstad was taken to the station house and after he was advised of and had waived his *Miranda* rights, he executed a written confession. Following Elstad's conviction, the Oregon Court of Appeals reversed, holding that the written confession should have been excluded.

The Supreme Court reversed, holding:

Prior to *Miranda,* the admissibility of an accused's in custody statements was judged solely on whether they were "voluntary" within the meaning of the Due Process Clause. . . . The court in *Miranda* required suppression of many statements that would have been admissible under traditional due process analysis by presuming that statements made while in custody and without adequate warnings were protected by the Fifth Amendment. . . .

\*   \*   \*   \*   \*   \*

Respondent's contention that his confession was tainted by the earlier failure of the police to provide *Miranda* warnings and must be excluded as "fruit of the poisonous tree" assumes the existence of a constitutional violation. . . .

\*   \*   \*   \*   \*   \*

In *Michigan v. Tucker* [417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) ], the court was asked to extend the *Wong Sun* [v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ] fruits doctrine to suppress the testimony of a witness for the prosecution whose identity was discovered as the result of a statement taken from the accused without the benefit of full *Miranda* warnings. . . . The court concluded that the unwarned questioning "did not abridge respondent's constitutional privilege . . . but departed only from the prophylactic standards later laid down by this court in *Miranda* to safeguard that privilege." . . .

We believe that this reasoning applies with equal force when the alleged "fruit" of a noncoercive *Miranda* violation is neither a witness nor an article of evidence but the accused's own testimony. . . . Once warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities. . . .

\*   \*   \*   \*   \*   \*

It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

\*   \*   \*   \*   \*   \*

We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing af-

ter he has been given the requisite *Miranda* warnings.

470 U.S. at 305–09 and 318, 105 S.Ct. at 1291–93 and 1298.

*Elstad* "makes clear that a failure to administer *Miranda* warnings, without more, does not automatically require suppression of the 'fruits' of the uncounseled statement." *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1517 (6th Cir.1988). "Where the uncounseled statement is voluntary, and thus not a product of 'inherently coercive police tactics or methods offensive to due process' ... there is no fifth amendment violation and the 'fruits' may be admissible in the Government's case in chief." *Id.* Similarly, under *Elstad*, "[i]f the unwarned statement was voluntary, and the allegedly tainted second statement was also voluntary, the second, warned statement is admissible" since "[t]he Fifth Amendment ... prohibits only the use of compelled testimony." *United States v. Wiley*, 997 F.2d 378, 383 (8th Cir.1993), *cert. denied*, ––– U.S. –––, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993).

We followed *Elstad* in *United States v. Hall*, 805 F.2d 1410, 1414 (10th Cir.1986), holding that "[t]he record reflects that after Hall was fully advised of his rights, he chose to give a recorded statement to Detective Marquez, and under the ruling in *Oregon v. Elstad* ... there was no error in admitting that statement." The government, citing *Hall*, argues that "[s]ince McCurdy's pre-*Miranda* statement was voluntary, and he voluntarily waived his rights before making his post-*Miranda* statement, under *Elstad* his post-*Miranda* statements are admissible." (Opening Brief for Appellant at 11).

McCurdy responds that the court properly found that suppression of his post-*Miranda* statements was warranted because "the officers' violation of *Miranda* was so gross" and "were the product of ... behavior that demonstrates so much contempt for *Miranda*." (Appellee's Answer Brief at 25–6). McCurdy argues that *United States v. Carter*, 884 F.2d 368 (8th Cir.1989), "is virtually on all fours with this case" and compels the suppression of his statements.

In *Carter*, the officers did not Mirandize defendant Carter until after they had in-duced him to turn over incriminating evidence and to make incriminating statements. Moreover, there was no break in time between Carter's unwarned confession, his receipt of *Miranda* warnings, and his second confession. In suppressing Carter's second confession, the court, following a review of *Elstad*, held "[a]ssuming arguendo that the first, unwarned confession was voluntary, we find that the circumstances of this case do not warrant admission of the second, warned, confession ... [since] the second confession came almost directly on the heels of the first." *Id.* at 373. The court reasoned that there was no passage of time between the unwarned confession, the subsequent *Miranda* warning, and the second confession— they were "part and parcel of a continuous process." *Id.* The court concluded that "[e]ven assuming ... that *Elstad* permits the second confession's admission, we hold alternatively.... [a]s we affirm ... the district court's conclusion that Carter's consent to the search was not obtained voluntarily ... that his confession must be suppressed as the fruit of the fourth amendment violation." *Id.* In our view, *Carter* is distinguishable from the case at bar.

Unlike *Carter*, the district court in our case found that the officers did not coerce McCurdy into making any incriminating statements prior to his receipt of the *Miranda* warnings. Also, there was a delay of several hours between the time that the officers detained McCurdy in their custody and the time that he was formally arrested, Mirandized, and gave his statement. The district court granted McCurdy's motion to suppress based solely on its finding that the officers had violated *Miranda*. The district court did not rule on whether McCurdy's post-*Miranda* statements were voluntary, notwithstanding the court's specific finding that the actions of the officers did not give rise to a due process violation.

■ It can almost always be said that interrogation results in a confession or an incriminating statement. However, admissibility of a confession (or an incriminating statement) requires an independent examination of the entire record and a consideration

of the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *United States v. Short,* 947 F.2d 1445 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

We hold that the district court, having determined that the officers did not violate McCurdy's due process rights, erred, as a matter of law, in concluding that the actions of the officers constituted a "gross" violation of *Miranda.*

We reverse the order of the district court suppressing McCurdy's post-*Miranda* statements and remand for further proceedings, mindful that under *Elstad,* the court must determine both whether the officers complied with *Miranda* which protects "defendants against governmental coercion leading them to surrender rights protected by the Fifth Amendment," *Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986), and whether the defendant's post-*Miranda* statements were voluntary within the meaning of the due process clause. *Elstad,* 470 U.S. at 309, 105 S.Ct. at 1293 ("[t]hough *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances *solely* on whether it is knowingly and voluntarily made" (emphasis added)). In conjunction therewith, "title 18, § 3501(a) unmistakenly mandates that '[b]efore [a] confession is received in evidence, the trial judge shall, *out of the presence of the jury,* determine any issue as to voluntariness.'" *United States v. Caro,* 965 F.2d 1548, 1552 (10th Cir.1992) (emphasis added).

### b.

■ The government contends that the district court erred in suppressing the physical evidence found in McCurdy's truck, citing *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). In *Tucker,* the Court declined to suppress the testimony of a witness whose identity was discovered as the result of an alibi statement given by the defendant at a time when the defendant had not been give his full *Miranda* warnings. The government argues that this rationale

should be applied here, and that since McCurdy's consent to search his truck and the unwarned statements were both voluntary, the photo of the headset found in the truck was also admissible under *Elstad.*

McCurdy responds that the district court correctly suppressed the physical evidence found in his truck since "[t]hat evidence was discovered as a direct result of McCurdy's statements regarding the ownership and location of the truck and of his consent to search, statements obtained in blatant violation of *Miranda.*" (Appellee's Answer Brief at 29). McCurdy states that the government's reliance on *Michigan v. Tucker* "does not help its argument" since the police in that case acted in good faith with the existing law and "[h]ere, the officers deliberately violated *Miranda* in order to obtain additional evidence." *Id.* at 32.

McCurdy argues that "[e]ven if the *Miranda* violation alone does not warrant suppression of every statement by [him] and of the evidence found in [his] truck," the district court was free to suppress the evidence on other grounds "[s]ince the record would support a finding of involuntariness with respect to both the statements and the consent." (Appellee's Answer Brief at 33). McCurdy acknowledges that "the District Court explicitly refused" to determine whether his statements or consent to search were voluntary. *Id.*

■ An officer's request to search a defendant's automobile does not constitute interrogation invoking a defendant's *Miranda* rights. *United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1568 (10th Cir.1993); *United States v. Gay,* 774 F.2d 368, 379–80 (10th Cir.1985). *See also United States v. Hidalgo,* 7 F.3d 1566, 1568 (11th Cir.1993); *United States v. Smith,* 3 F.3d 1088, 1098 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *Cody v. Solem,* 755 F.2d 1323, 1330 (8th Cir.1985), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985). Thus, officers may, following a voluntary consent to search, search a vehicle or portion thereof without first apprising the owner of the vehicle of his rights under *Miranda.*

A consent to search, however, is valid only if voluntary. We determine the voluntariness of a consent to search under the "totality of the circumstances, with the government bearing the burden of proof." *United States v. Zapata*, 997 F.2d 751, 758 (10th Cir.1993). The "government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." *Id.* (quoting *United State v. Nicholson*, 983 F.2d 983, 988 (10th Cir.1993)). If a consensual search is preceded by a Fourth Amendment violation, the government must prove both the voluntariness of the consent under the totality of the circumstances and that there was a break in the casual connection between the illegality and the evidence obtained. *United States v. Melendez–Garcia*, 28 F.3d 1046, 1053 (10th Cir.1994). *See also United States v. Peters*, 10 F.3d 1517, 1523 (10th Cir.1993) (incriminating statements and consents to search made following an illegal arrest must be considered inadmissible as tainted unless the government can establish that the statements were purged of the taint of the unlawful invasion).

Here, however, McCurdy was lawfully in police custody. There was no Fourth Amendment violation. Accordingly, the government was entitled to introduce into evidence the physical evidence found in McCurdy's vehicle if the government established that McCurdy voluntarily consented to the search of his vehicle and if the search did not exceed the scope of his consent. *See United States v. Price*, 925 F.2d 1268, 1270 (10th Cir.1991), followed in *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir.1993) and *United ed States v. Nicholson*, 983 F.2d 983, 988 (10th Cir.1993). The district court, despite the government's requests, refused to rule on the voluntariness of McCurdy's consent to search.

We hold that the district court erred in suppressing the physical evidence found in McCurdy's truck without first ruling on the voluntariness of McCurdy's consent to search his truck. Thus, we reverse the order of the district court suppressing the physical evidence found in McCurdy's truck. Upon remand, the district court must make specific findings as to whether McCurdy voluntarily consented to the search of his vehicle for identification and whether McCurdy thereafter consented to the continued search of his vehicle after Tafoya discovered his shirt and identification.

The district court must make these determinations based on the totality of the circumstances. *See United States v. McKneely*, 6 F.3d 1447, 1452 (10th Cir.1993) (quoting *United States v. Werking*, 915 F.2d 1404, 1409 (10th Cir.1990)). In determining whether a consent to search is voluntary, a court should consider, *inter alia*, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances. An officer's request for consent to search does not taint an otherwise consensual encounter "as long as the police do not convey a message that compliance with their request is required." *United States v. Griffin*, 7 F.3d 1512, 1517 (10th Cir.1993). *See also United States v. Lindsey*, 877 F.2d 777 (9th Cir.1989) (holding consent was voluntary absent any police threats or coercion).

**REVERSED** and **REMANDED** for further proceedings consistent herewith.