UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 3/25/96**

UNITED STATES OF AMERICA,      )
                                    )
     Plaintiff - Appellee,       )
                                    )
  v.                             )       No. 95-2164
                                    )   (D.C. No. CR-95-38-LH)
ERIC STUART HARFST,         )        (D. NM)
                                    )
     Defendant - Appellant.    )

## ORDER AND JUDGMENT[*]

Before **EBEL**, **MCWILLIAMS**, and **LUCERO**, Circuit Judges.

Having conditionally pled guilty to possession with intent to distribute methamphetamine, defendant Eric Harfst appeals the district court's denial of his motion to suppress the methamphetamine that was seized from the luggage in his private compartment on board an Amtrak train. He argues that Drug Enforcement Administration Agent Kevin Small violated the Fourth Amendment by "seizing" him in the private train compartment, by visually "searching" the compartment when he pulled

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

back a curtain, by searching the suitcase and toiletry bags without valid consent, and by arresting him without probable cause. We affirm.

## I.

DEA Agent Small routinely checks Amtrak records to identify passengers traveling in sleeper cars on one-way tickets purchased within three days of departure. He categorized defendant as a possible drug courier based on his cash purchase in January 1995 of a one-way private sleeper compartment ticket from Los Angeles to Chicago within two hours of departure, and his failure to provide a call back number.

Agent Small boarded the train when it arrived in Albuquerque, New Mexico and approached defendant's compartment. The door to the compartment was open, with a heavy curtain drawn across the doorway. Agent Small knocked on the door frame. Without asking who was there, defendant pulled the curtain aside. Agent Small identified himself as a police officer and asked to speak with defendant. Defendant stepped out of the compartment into the hallway next to Agent Small, leaving the curtain open.

Agent Small questioned defendant about his travel plans and inspected his ticket and identification. Agent Small then stated that he worked for the DEA. He stated that people had been using the train to smuggle drugs. Agent Small was stating, "we have a problem on board the train, so . . . ," when defendant interjected, "Oh, really. Cool." Agent Small then asked if defendant would voluntarily consent to the search of his luggage to make sure "it's not full of marijuana or cocaine." Defendant answered, "Um.

That's fine. I mean, I don't understand why, but . . . ." Agent Small interrupted, explaining, "Well . . . like I said, we have a problem on board the train." Defendant volunteered that he had a little bit of marijuana and showed it to Agent Small. Agent Small told defendant he was not looking for a little bit, but was looking for fifty to sixty pounds.

Referring to the luggage inside defendant's sleeper compartment that was visible from the hallway, Agent Small asked, "Is that your suitcase up there?" Defendant stated that it was. Agent Small asked again whether defendant would consent to the search of the suitcase. Defendant stated, "I guess I don't," and then opened his suitcase. He removed two toiletry bags, stating, "toiletries and more toiletries," and sat them next to the suitcase. Defendant then tilted the suitcase towards Agent Small and moved the contents around. Agent Small asked defendant to move the bag closer. He also asked to put his hand inside the suitcase. Defendant consented.

After Agent Small searched the suitcase, he asked whether the toiletry bags also belonged to defendant. Defendant responded that they were his. Agent Small quickly opened one bag and then the next. In the second bag he discovered a Saran-wrapped package containing a chunky, rocky substance which he believed was either crack cocaine or methamphetamine. Agent Small arrested defendant.

The district court ruled that the encounter in the private train compartment was consensual throughout its duration, that Agent Small's visual observation of the

compartment did not amount to a search, that defendant consented to the search of his suitcase and toiletry bags, and that probable cause supported the arrest. We review for clear error any factual findings the district court made in connection with the suppression motion. United States v. Sandoval, 29 F.3d 537, 539 (10th Cir. 1994). We review de novo the district court's legal conclusions regarding the Fourth Amendment reasonableness of the police conduct. Id. Although the defendant generally bears the burden of proof on a suppression motion, "whenever the government relies on the consent of the defendant to validate a search the government bears the burden of proving that the consent 'was freely and voluntarily given.'" Id. (quoting Florida v. Royer, 460 U.S. 491, 497 (1983) (further citation omitted)).

II.

We hold that the encounter between Agent Small and defendant in the private train compartment was not a "seizure" within the meaning of the Fourth Amendment. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)).

To decide "whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police

4

conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Id. at 439; see also United States v. Little, 18 F.3d 1499, 1503 (10th Cir. 1994) (en banc) (emphasizing that the test is objective). "No single factor dictates whether a seizure has occurred." United States v. Houston, 21 F.3d 1035, 1037 (10th Cir. 1994).

The location of the encounter is not determinative. Little, 18 F.3d at 1504. An encounter may be consensual even when it occurs within the confines of a private train compartment. See id. So long as the encounter is consensual, the police do not need articulable suspicion to question a passenger in a private train compartment, Houston, 21 F.3d at 1037, even when the door to the compartment is closed, see United States v. Girolamo, 23 F.3d 320, 324, 328 (10th Cir.), cert. denied, 115 S. Ct. 640 (1994).

In this case, Agent Small approached the compartment alone. He did not display a weapon. The door to the compartment was open. Agent small remained in the aisle of the railway car throughout the encounter until, with defendant's consent, he entered to search defendant's bag. The recording of the encounter shows that Agent Small did not question defendant in a threatening or coercive way. Although Agent Small stood close to defendant and never advised him of the right to refuse to answer questions, those factors do not transform an encounter into a seizure. See Little, 18 F.3d at 1505 ("no *per se* rule" requires advising of right not to answer questions). Likewise, the request for consent to search defendant's suitcase "does not taint an otherwise consensual encounter

5

'as long as the police do not convey a message that compliance with their request is required.'" United States v. Griffin, 7 F.3d 1512, 1517 (10th Cir. 1993) (quoting Bostick, 501 U.S. at 435). Considering all of the circumstances, we hold that a reasonable person would have felt free to terminate the encounter or refuse Agent Small's requests. Thus, the encounter was consensual. See Houston, 21 F.3d at 1037.

III.

Defendant's next argument relates to Agent Small's visual "search" for luggage after defendant pulled aside the curtain to the train compartment. A search occurs when the police intrude upon a legitimate expectation of privacy. United States v. Jacobsen, 466 U.S. 109, 113 (1984); Illinois v. Andreas, 463 U.S. 765, 771 (1983). To determine whether a defendant possesses a "constitutionally protected reasonable expectation of privacy" we make a "two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" California v. Ciraolo, 476 U.S. 207, 211 (1986) (quotation omitted); United States v. Jefferson, 925 F.2d 1242, 1248 (10th Cir.), supplemented by, 931 F.3d 1396 (10th Cir.), cert. denied, 502 U.S. 884 (1991).

Whether an asserted expectation of privacy is legitimate "varies, of course, with context, depending for example, upon whether the individual asserting the privacy interest is at home, at work, in a car, or in a public park." Vernonia Sch. Dist. 47J v. Acton, 115 S. Ct. 2386, 2391 (1995) (citation omitted). We have recognized that "an individual

6

traveling in a private train roomette has a higher expectation of privacy than an individual traveling in a public passenger car of the train," United States v. Ward, 961 F.2d 1526, 1531-32 (10th Cir. 1992), overruled on other grounds, Little, 18 F.3d at 1506, but that "such roomettes do not confer upon occupants the same degree of privacy as a dwelling or hotel or motel room . . . ." Little, 18 F.3d at 1504. Whatever degree of privacy defendant reasonably expected as he sat behind the closed curtain and open door in the private compartment, that privacy was diminished when he opened the curtain and stepped into the hallway, thereby exposing his suitcase to Agent Small and whomever else might have walked through the hallway.

Although defendant argues that Agent Small invaded his privacy, the facts demonstrate that defendant abandoned his privacy. Agent Small had "a right to be . . . [in] the aisle of a railway car," United States v. Morin, 949 F.2d 297, 301 (10th Cir. 1991), and did not need articulable suspicion for the consensual encounter in the private train compartment, Houston, 21 F.3d at 1037. Agent Small did not act unlawfully in knocking on the door frame to summon defendant for questioning. Cf. Girolamo, 23 F.3d at 324, 328. When defendant pulled back the curtain, Agent Small identified himself as a police officer and showed his badge. Defendant chose to step out of the compartment into the aisle and to leave the curtain open. Defendant's conduct shows that he did not seek to preserve the contents of the sleeper compartment as private. See Katz v. United

7

States, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

As Agent Small stood in the aisle of the railway car, he viewed defendant's suitcase through the open door of the compartment. Agent Small should not be precluded from observing what would have been visible to passengers passing through the railway car. See Texas v. Brown, 460 U.S. 730, 740 (1983) ("There is no reason [an officer] should be precluded from observing . . . what would be entirely visible to him as a private citizen."). Finding no subjective expectation of privacy, we hold that Agent Small's observation of the suitcase was not an unreasonable search within the meaning of the Fourth Amendment. See United States v. Dunn, 480 U.S. 294, 304-05 (1987) (finding no Fourth Amendment violation from officers peering through open front of barn from open field).

IV.

Next, we consider whether defendant voluntarily consented to the search of his suitcase and toiletry bags. The district court, after reviewing the audio tape of the encounter, found that defendant voluntarily consented to the search of the luggage and that Agent Small did not exceed the scope of that consent by searching the toiletry bags. We review those findings for clear error. United States v. Nicholson, 983 F.2d 983, 988 (10th Cir. 1993); United States v. Pena, 920 F.2d 1509, 1515 (10th Cir. 1990), cert. denied, 501 U.S. 1207 (1991).

8

A "search conducted pursuant to a valid consent is constitutionally permissible." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The government bears the "'burden of proving that the consent was, in fact, freely and voluntarily given.'" Id. (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). "Voluntariness is a question of fact to be determined from all of the circumstances," id. at 248-49, taking into consideration, among other things, any "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant," United States v. McCurdy, 40 F.3d 1111, 1119 (10th Cir. 1994). "The 'government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given.'" Id. (quoting United States v. Zapata, 997 F.2d 751, 758 (10th Cir. 1993) (further quotation and citation omitted)).

Upon careful review of the record, including the audio tape, we uphold the district court's ruling that defendant voluntarily consented to the search of his suitcase. There is no evidence of coercion or duress. Standing alone, Agent Small's statement, "we have a problem on board the train" may be said to be deception or trickery. When considered in the context of the entire conversation we conclude it was not. Agent Small clearly explained that he worked for the DEA and the "we have a problem with people using the trains to smuggle drugs."

9

Although defendant responded, "I guess I don't," the second time Agent Small requested consent to search the suitcase, we agree with the district court that the inflection of defendant's voice indicates an affirmative response. Following that response, defendant opened his suitcase, tilted it towards Agent Small and moved things around. When Agent Small specifically asked for permission to put his hand in the suitcase, defendant unambiguously consented. Defendant's responses and cooperation show that he voluntarily consented.

We also agree that Agent Small's search of the toiletry bags did not exceed the scope of the consent. "The Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted" the search of a particular container. Florida v. Jimeno, 500 U.S. 248, 249 (1991). "The scope of a search is generally defined by its expressed object." Id. at 251.

Here, Agent Small told defendant he was looking for a large quantity of drugs and asked for permission to search the suitcase. Defendant consented, but immediately removed two toiletry bags and set them aside, stating, "toiletries and more toiletries." The district court found that, in removing the toiletry bags, defendant did not limit or revoke the consent previously given, or otherwise restrict the scope of that consent. The district court noted that defendant did not audibly object when Agent Small opened the first of the two toiletry bags and found nothing. This indicated to the district court that

10

consent to search the toiletry bags had been given earlier, it had not been limited or revoked, and there was no intent to exclude the second toiletry bag from the scope of the search. Those findings are not clearly erroneous.

V.

Finally, defendant argues that Agent Small lacked probable cause to arrest him based on the Saran-wrapped package, without knowing for certain what the package contained. The district court found that probable cause arose when Agent Small concluded that the package contained either crack cocaine or methamphetamine. "'Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee had committed or is committing an offense.'" Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting Jones v. City and County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988)).

Agent Small testified at the suppression hearing that he had seized drugs on trains approximately 220 times. He also testified that he assumed the Saran-wrapped package contained marijuana and asked defendant, "How much marijuana you got here?" When defendant hesitated, it occurred to Agent Small that the package might contain something else. Agent Small squeezed the package and felt a chunky, rocky substance. He testified that he knew, at that point, that the package contained either crack cocaine or methamphetamine. Aplt. App. at 79 ("I knew it was going to either be crack cocaine or

11

methamphetamine"); id. at 80 ("I knew it was one of th[ose] two things").  Thus, based on his sense of touch, Agent Small believed that the package contained one of two substances, both of which are illegal.  These circumstances were sufficient to warrant the reasonable belief that defendant was committing an offense.  Probable cause, therefore, supported the arrest.  See Minnesota v. Dickerson, 113 S. Ct. 2130, 2137 (1993) (recognizing that probable cause can arise from officer's sense of touch).

The district court's denial of the suppression motion is AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge