F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARYL ANTHONY KELLY,

    Defendant-Appellant.

No. 99-2113

(D.C. No. CR-97-315-JC)
(D.N.M.)

ORDER AND JUDGMENT[*]

Before BALDOCK, KELLY, and HENRY, Circuit Judges.[**]

Defendant Daryl Kelly appeals the district court's denial of his motion to suppress evidence related to the seizure of drugs during a search of his train compartment. He argues that a federal agent seized the evidence during a

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, the panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2)(c); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

non-consensual encounter and that he did not give his voluntary consent to the search. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I.

Looking at a list of Amtrak reservations, DEA Agent Kevin Small noticed that Defendant had paid cash for a one-way ticket from Los Angeles to Detroit. Small entered the train's sleeper car and turned on a hidden tape recorder. He stood in the doorway of the room across the hall and knocked on Defendant's door. Task Force Officer Mark Barela stood in the vestibule. Defendant opened the curtain and looked out. Small showed Defendant his credentials and identified himself as a police officer. Small was wearing street clothes and his gun was hidden in his pocket. Defendant opened the door to the room, which is about 6'9" by 3' or 4,' while Small remained in the doorway of the room across the hall.

When Small asked Defendant if he could speak with him, Defendant gave "a furtive answer, yes, or, sure, something along those lines." Small discussed Defendant's travel plans with him. Small asked Defendant for some identification, but Defendant said he had lost it or left it at the station. Small told Defendant that he worked for the DEA and that they were having a problem with people using trains to smuggle narcotics and contraband. Small asked Defendant

-2-

if he would voluntarily consent to a search of his luggage for cocaine, marijuana, and narcotics.  Defendant gave "an affirmative answer."

Small remained in the hallway while Defendant handed him a small carry-on bag to search.  Barela stood close by for protection.  The officers left room for Defendant to walk past them.  Defendant told Small that he had a "joint," but Small found no drugs in the first bag.  Then Defendant handed Small a second bag.  While Small was searching it, Defendant handed Small the marijuana cigarette, which Small gave to Barela to discard.  Small found no drugs in the second bag.  Defendant retrieved a hanging garment bag from either the room or the hallway and handed it to Small.  Small searched it, again finding no drugs.

Small then asked Defendant if he would consent to the officer's searching the room for drugs.  Defendant hesitated, asking Small why he wanted to look further.  Although Defendant's answer is inaudible on the audiotape, Small testified at the suppression hearing that Defendant gave an affirmative answer.  Small made no move to enter the room, but waited to see what Defendant would do next.  Defendant handed Small a plate of leftover barbecue food, which Small handed back.  Then Defendant handed Small a rolled up paper McDonald's sack.  Small asked Defendant if it contained trash, and Defendant nodded affirmatively.  Small looked inside and saw what looked like cocaine or crack.  Finally, Small and Barela arrested Defendant.

The government charged Defendant with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841. Defendant filed a motion to suppress the drug evidence. Small and Defendant both testified at the suppression hearing, and the district court listened to the tape recording of the search more than once. The district court denied the motion to suppress, finding:

> What I find in this case is I believe Agent Small. I find him to be credible. What happened is that he asked to search the room, and your client simply started handing him stuff, just like he did with the bags. He said, may I search your room. Whether he said go ahead or not, the transcript prepared by the government says he said go ahead. Whatever, the defendant never said, no, you cannot search my room. The defendant immediately started doing just what he did with the bags, and that was handing them out to the agent. It's perfectly logical for Agent Small, when you hand him something like that, he had just searched the bags, thinking he could search the plate with the barbecue, and then here came the sack with the coke, so for officer safety, he's going to open up the sack and look at it. There's no reason not to believe that he doesn't have permission to do that. [Defendant] handed it out to him.
> I've also been able to observe [Defendant] on the stand. I don't find him to be credible. What I find in this case is that he has read the transcript, and he has seen in the transcript where something might be just a little bit different and helped his cause, and that's the way he's testified, so I don't find him to be credible on this. Your motion to suppress will be denied.

Defendant entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2), allowing him to appeal the denial of the motion to suppress.

II.

Defendant raises two arguments on appeal: (1) that the encounter was not consensual and (2) that he did not voluntarily consent to the search of his room. [1] In reviewing the denial of a motion to suppress, we review the evidence in a light most favorable to the government. United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999). We review the district court's findings of historical fact for clear error and give due weight to the inferences which the district court draws from those findings. Id. The credibility of witnesses and the weight to be given the evidence is the province of the district court. Id. The district court's ultimate determination as to the constitutionality of a law enforcement official's actions is a question of law reviewable de novo. Id.

Because a consensual encounter is voluntary, such an encounter does not constitute a "seizure" within the meaning of the Fourth Amendment. Patten, 183 U.S. at 1194. Rather, a consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement

---

[1] The government argues that Defendant has waived the first issue–that the encounter was not consensual–because he did not raise it in the district court. See United States v. Dewitt, 946 F.2d 1497, 1502 (10th Cir. 1991). The motion to suppress asked the court to find that Defendant did not consent to the search, although the testimony at the suppression hearing addressed both issues. We believe that the issues are so closely related that we may consider both on appeal.

officer. Id. By contrast, an individual is "seized" when he has an objective reason to believe that he is not free to terminate his conversation with the officer and proceed on his way. Id. The question of whether an encounter was consensual is a matter for the refined judgment of the district court. Id. Valid consent is that which is freely and intelligently given. Id. Whether a consent to search during a consensual encounter with a police officer is voluntary is a question of fact to be determined from the totality of the circumstances. Id.

III.

Based on the record before us, the district court correctly concluded that the encounter between Small and Defendant was consensual. Small was wearing street clothes and kept his gun hidden, but identified himself as an officer. See United States v. Harfst, No. 95-2164, 1996 WL 131501, at *2 (10th Cir. 1996) (unpublished) (noting that an encounter was consensual in part because the officer identified himself but did not display his gun). Although Defendant's room was a small, confined space, the officers both stood outside Defendant's room, leaving enough room for Defendant to exit. See id. (holding that an encounter in a private train compartment was consensual, in part because the officer stood in the aisle and left the door open) (citing United States v. Little, 18 F.3d 1499, 1503-05 (10th Cir. 1994) (en banc)). Small was not required to tell Defendant that he had

-6-

a right to refuse to answer questions.  See id. at *2.  A reasonable person would have felt free to terminate the encounter or refuse Small's requests.

Defendant consented to speaking with Small and agreed to let Small search his bags, handing them out to Small one at a time.  Small reasonably believed that Defendant consented to Small's request to search of the room.  It was objectively reasonable for Small to conclude that Defendant consented to the search of the paper sack because Defendant handed it out to him and indicated that it contained trash.  See id. at *5 (holding that the defendant's actions allowed the officer to reasonably believe that the defendant consented to the search of his bags).

AFFIRMED.


Entered for the Court,


Bobby R. Baldock
Circuit Judge