72 F.3d 139
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
George Harold KNOX, Defendant-Appellant.
 No. 94-4218.
 United States Court of Appeals, Tenth Circuit.
 Dec. 7, 1995.
 
 1
 Before EBEL and McKAY, Circuit Judges, and COOK, District Judge.**
 
 
 2
 ORDER AND JUDGEMENT*
 
 
 3
 The parties have agreed that this case may be submitted for decision on the briefs. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1.2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 4
 Pleasant Grove police officers executed a search warrant on October 23, 1992, in the Shady Wood Apartments, Apt. No. 46, in Pleasant Grove, Utah. Police Chief Michael Ferre was sitting in an unmarked, white Chevy while dressed in plain clothes with his police chief badge attached to the outside of his suit. He was positioned in the parking lot outside the apartment building during execution of the warrant, and he was providing back-up security for the officers conducting the search for drugs in the apartment. There were no marked police cruisers in the parking lot.
 
 
 5
 While parked, Chief Ferre noticed Appellant George Harold Knox driving into the apartment complex and straining to look in the direction of the apartment being searched. The Defendant made a right turn onto an auxiliary road, a quick left turn into an alleyway behind the apartment building, performed a U-turn, and then slowly proceeded back toward the front of the apartment building. Again, Chief Ferre observed Mr. Knox anxiously looking in the direction of the apartment being searched. The Defendant then parked his vehicle in the parking lot outside the building being searched and began to exit his vehicle. Chief Ferre promptly pulled his unmarked vehicle behind the Defendant's car, thereby boxing the Defendant's car into the parking space.
 
 
 6
 As the Defendant was standing outside his vehicle with the car door still open, Chief Ferre approached him and asked him what he was doing at the apartment complex. The Defendant responded by saying he was there to see a friend named Sam. Chief Ferre asked the Defendant where his friend lived, and the Defendant pointed toward apartment No. 46, the apartment being searched.
 
 
 7
 Chief Ferre asked Mr. Knox for identification. The Defendant had no identification with him, which meant he was driving without carrying a license.[1] Chief Ferre then asked him his name and birth date. The Defendant gave his name as George Knox, and Chief Ferre returned to his vehicle to run a computer check on the name. Two plain clothes police officers from the Utah County Narcotics Enforcement Team--Sergeant Lee Fox and Detective Andre Leavitt--arrived at the scene in response to a call for back up by Chief Ferre.
 
 
 8
 Sergeant Fox asked the Defendant which apartment he was there to visit. Defendant again pointed to the area of apartment No. 46 and said, "I think it's Apartment Number 46." R. Vol. III, Suppression Hearing Tr. at 29. Mr. Knox then voluntarily informed Sergeant Fox that he was not supposed to be in the area because he was on a State "intensive supervision"[2] release.
 
 
 9
 Sergeant Fox noticed an open box of .22 caliber bullets and a clip for a .22 caliber firearm in plain view on the console between the two front seats of the Defendant's car. Sergeant Fox knew that individuals on supervised release are not allowed to possess firearms or ammunition, and he asked the Defendant what the ammunition was for. Defendant replied that it was left over from a rabbit hunting trip. Sergeant Fox asked the Defendant if he had any guns in his vehicle, and he replied that he did not have any guns in the car.
 
 
 10
 Detective Leavitt then asked if he could look through Defendant's vehicle for any guns. Defendant replied, "Sure, go ahead," and without prompting, proceeded to take a set of keys from his pants pocket and opened the vehicle's trunk. Sergeant Fox and Detective Leavitt immediately observed in the trunk a .22 caliber rifle lying on top of other items.
 
 
 11
 Chief Ferre's computer check of "George Knox" found no record. Chief Ferre returned to the Defendant, and again asked him his name. Defendant told Chief Ferre that his name was Harold Knox, but that he also went by George. A computer check on Harold Knox showed he was driving with a suspended license.
 
 
 12
 Sergeant Fox then called parole and probation authorities and confirmed that Defendant was under "intensive supervision" and was restricted from possessing firearms or ammunition. Defendant then was arrested for being a felon in possession of a firearm.
 
 
 13
 The district court denied Defendant's motion to suppress evidence from the search of his vehicle. Defendant entered a plea of guilty, conditioned on this appeal, on a charge of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. Sec. 922(g). Mr. Knox was sentenced to serve seventy-seven months imprisonment running concurrently with any State sentence he was then serving.
 
 
 14
 We review factual findings on a motion to suppress under the clearly erroneous standard. United States v. McSwain, 29 F.3d 558, 560 (10th Cir.1994). We view the evidence on appeal in a light most favorable to the government. Id. We make a de novo review of the "ultimate legal determination of reasonableness under the Fourth Amendment." United States v. Peters, 10 F.3d 1517, 1521 (10th Cir.1993).
 
 
 15
 Appellant raises three issues: (1) whether the initial stop of the his vehicle violated the Fourth Amendment; (2) whether he voluntarily consented to the search of his vehicle; and, (3) whether the sighting by Officer Fox of the .22 caliber ammunition shells justified a warrantless search.
 
 
 16
 Appellant's counsel argues that the initial stop of Mr. Knox's car by Chief Ferre violated the Fourth Amendment because it was not consensual and was not supported by reasonable suspicion. The government argues that the Defendant's encounter with the officers was completely consensual because of the officers' non-threatening appearance and demeanor.
 
 
 17
 We agree with Appellant's counsel that the encounter between Chief Ferre and Mr. Knox is best characterized as a Terry stop. See generally Terry v. Ohio, 392 U.S. 1 (1968). "[A] person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 553 (1980). Additionally, a seizure is objectively measured by whether under "all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554.
 
 
 18
 In this case, Chief Ferre did not just approach and question the Defendant as in the facts of Florida v. Bostick, 501 U.S. 429, 431 (1991). Instead, Chief Ferre pulled his unmarked, white Chevy behind Mr. Knox's parked car, boxing him in. Although Chief Ferre was in an unmarked vehicle, his boxing in of Defendant's car was a show of authority which was intended to, and which in fact did, restrain the Defendant's movement. Also, his police badge was attached to the outside of his suit as he approached and questioned the Defendant. Our previous cases cited by the government are distinguishable from this case because the officers in those cases did not have their badges visible and they did not involve the physical restraint of defendants in vehicles. See United States v. Houston, 21 F.3d 1035, 1037 (10th Cir.1994); United States v. Zapata, 997 F.2d 751, 756-57 (10th Cir.1993); United States v. Laboy, 979 F.2d 795, 799 (10th Cir.1992). A seizure of Mr. Knox occurred because a reasonable person under his circumstances would not feel free to leave.
 
 
 19
 The temporary detention of a Terry stop is justifiable when a police officer can articulate specific facts, which taken with rational inferences from those facts, reasonably warrant the detention. Terry, 392 U.S. at 21. Under the circumstances of this case, the stop of the Defendant was supported by reasonable suspicion.
 
 
 20
 In United States v. Perdue, 8 F.3d 1455, 1458 (10th Cir.1993), a case factually similar to this case, police officers were executing a search warrant for drugs on remote, rural property set back from the road. We held under Terry that officers assigned to perimeter security during the execution of the search warrant had reasonable suspicion to stop a vehicle which, after driving down the road to the property, abruptly turned around and attempted to leave. Id. at 1462.
 
 
 21
 In this case, Chief Ferre was providing perimeter security to protect officers conducting a search of an apartment for drugs. The Defendant's actions created a reasonable suspicion that the police operation might have been threatened. The Defendant entered the apartment complex, drove past the apartment being searched while looking in the direction of that apartment, then he made a U-turn back and parked in the lot near the apartment being searched. Thus, we hold that the brief detention of a Terry stop is justified to the extent of determining the purpose of a suspicious person when an officer, who is maintaining a secure area to protect a police operation, observes reasonably suspicious activity in the secure area.
 
 
 22
 The minimal intrusion of a brief stop under these circumstances is vital to protecting the officers executing the search warrant.[3] The execution of a search warrant for drugs is an inherently dangerous police operation, and a stop under Defendant's circumstances will also protect innocent bystanders who have a legitimate purpose for being in the secure area.
 
 
 23
 Next, Appellant's counsel argues that Mr. Knox's voluntary consent to the search of his vehicle was negated by the illegal detention of the Defendant. In Nardone v. United States, 308 U.S. 338, 341 (1939), the Court held that an illegal search triggers the exclusionary rule causing other evidence obtained solely on the basis of the illegal search to be tainted as "fruit of the poisonous tree." As explained above, the officers had reasonable suspicion to briefly detain the Defendant to determine his purpose within the zone of the police operation. Information volunteered during the completion of a valid Terry stop, coupled with seeing ammunition in plain view in the car, created information sufficient to justify expanding the Terry-type inquiry to the issue of possession of illegal weapons. No prior taint attaches because his detention at that point was lawful. No circumstance suggests that his consent to a search of the trunk was anything but voluntary.
 
 
 24
 Finally, Appellant's counsel argues that the sighting of the .22 caliber ammunition by Officer Fox did not justify a warrantless search. The Supreme Court has applied the "plain view" doctrine in cases, such as this, where an officer inadvertently comes across an incriminating object even though the officer was not searching for evidence against the defendant. See, e.g., Harris v. United States, 390 U.S. 234 (1968). Evidence may be seized by an officer without a warrant if: (1) the officer did not violate the Fourth Amendment " 'in arriving at the place from which the evidence could be plainly viewed' "; (2) the officer had a lawful right of access to the seized object; and, (3) its incriminating character is immediately apparent and the evidence is in plain view. United States v. Naugle, 997 F.2d 819, 822 (10th Cir.) (quoting Horton v. California, 496 U.S. 128, 136-37 (1990)), cert. denied, 114 S.Ct. 562 (1993).
 
 
 25
 Appellant's counsel asserts that Chief Ferre violated the Fourth Amendment in stopping the Defendant, that Sergeant Fox did not have a lawful right of access to the ammunition because of Chief Ferre's purported illegal stop of the Defendant, and that ammunition does not have an incriminating character. As we have already held, Chief Ferre did not violate the Fourth Amendment in briefly detaining the Defendant. The seizing officer, Sergeant Fox, was assisting Chief Ferre in determining whether the Defendant had a legitimate purpose to enter the area secured for the police operation. Sergeant Fox had a lawful right to be in a position to view the ammunition because he observed it while assisting Chief Ferre in maintaining the secure area.
 
 
 26
 Appellant counsel's contention that ammunition does not have an incriminating character is meritless because Mr. Knox had already volunteered to Sergeant Fox that he was on supervised release. Under these circumstances, an open box of .22 caliber bullets does have an immediately apparent incriminating character. Section 922(g)(1) makes unlawful the possession of both firearms and ammunition by convicted felons. The ammunition alone would constitute probable cause for an arrest of Mr. Knox under Sec. 922(g), which justified the follow up request to search the trunk of his car. Thus, the warrantless seizure of the .22 caliber ammunition by Sergeant Fox was proper under the plain view doctrine.
 
 
 27
 The district court's denial of Defendant's motion to suppress is AFFIRMED.
 
 
 
 **
 Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Utah State law requires an operator of a motor vehicle to have his license in his immediate possession at all times. Utah Code Ann. Sec. 41-2-124(1) (1987) (recodified at Utah Code Ann. Sec. 53-3-217)
 
 
 [2]
 Defendant's characterization of his State release led Sergeant Fox to deduce that he was under intensive supervision parole/probation because he had a history of drug activity. Apparently, the intensive status restricts persons on supervised release from entering areas designated as drug problem areas
 
 
 [3]
 In Terry, the Court recognized the
 immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
 In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.
 392 U.S. at 23-24 (footnote omitted).