UNITED STATES of America, Plaintiff–Appellant,

v.

Bonnie Kaye LITTLE, Defendant–Appellee.

No. 94–2227.

United States Court of Appeals, Tenth Circuit.

July 24, 1995.

David N. Williams, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., with him on the brief), Albuquerque, NM, for plaintiff-appellant.

Kimberly Homan of Sheketoff & Homan, Boston, MA (David Z. Chesnoff of Goodman & Chesnoff, Las Vegas, NV, with her on the brief), for defendant-appellee.

Before ANDERSON and HOLLOWAY, Circuit Judges, and ELLISON, District Judge *.

HOLLOWAY, Circuit Judge.

The government appeals from the district court's order after remand granting Defendant–Appellee Bonnie Kaye Little's motion to suppress. Jurisdiction in this court is proper under 18 U.S.C. § 3731.

## I

This is the government's second appeal in this case and the sequel to *United States v. Little*, 18 F.3d 1499 (10th Cir.1994) (en banc) (*Little I* ). In *Little I* we reversed the district court's earlier grant of Little's motion to suppress and remanded to the district court for further proceedings. On remand, the district court made new findings pursuant to our mandate and again granted Little's motion to suppress. *United States v. Little*, 862 F.Supp. 334 (D.N.M.1994) (*Little II* ).

The facts are set forth fully in *Little I*, and we therefore discuss them only as necessary to this opinion.

## II

In *Little I*, we remanded to the district court because we concluded that the district court had failed to apply the correct legal standard to determine whether the encounter between Agent Small and Ms. Little was consensual. We noted that the proper

* Honorable James O. Ellison, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

standard was enunciated in *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388–89, 115 L.Ed.2d 389 (1991):

> in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

The test is objective and fact specific, examining what the police conduct would have communicated to a reasonable person based on all the circumstances surrounding the encounter. *Little I*, 18 F.3d at 1503.[1]

On remand the district court concluded that under the totality of the circumstances test, Little was illegally seized when Small asked Little to accompany him to the baggage area to view a second bag; this followed a voluntary police-citizen type of encounter. *Little II*, 862 F.Supp. at 335–36. In analyzing the encounter between Agent Small and Ms. Little, the district judge said:

> the initial meeting between Agent Small and Ms. Little was ... a police-citizen encounter which is characterized by the voluntary cooperation of a citizen in response to non-coercive questioning. Nothing occurred during this initial encounter

that warranted further questioning. The encounter then developed into a *Terry*-type of encounter which is considered a seizure of the person within the meaning of the Fourth Amendment but need *not* be supported by probable cause. When Ms. Little refused to give Agent Small permission to search her bag, the intensity of the investigation heightened. The encounter quickly escalated to the third type of encounter which is justified only when there is probable cause to believe that a person has committed or is committing a crime. 862 F.Supp. at 335.

The judge concluded that at the point when Agent Small asked Little to accompany him to the baggage area, "Ms. Little could reasonably believe that she was not free to ignore Agent Small's requests and go about her business. At that point in time, Ms. Little's liberty was restrained." *Id.* at 336. In making this determination the judge stated that he had considered the following factors, *inter alia:* the confined space within which Little was questioned; the fact that the questioning was conducted outside public view; the accusatory, persistent, and intrusive nature of the questioning by Agent Small; and the failure of Agent Small to advise Little that she had the right to refuse to answer questions or to refuse to accompany him to the baggage area. *Id.* at 335. The

---

1. After setting forth the test, we examined the factors considered by the district court. We explicitly rejected "the argument that the location of an encounter on a train (outside the train, in a public coach, or in a private roomette) is determinative of the seizure question," 18 F.3d at 1504, noting that "*Bostick* explicitly held that the particular location of an encounter is but one factor in the 'totality of the circumstances test.'" *Id.* at 1503. *See Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387.

We then noted that the district court had emphasized Agent Small's failure to advise Ms. Little that she had the right to refuse to answer questions. We also noted that Agent Small had told Little that she need not agree to the search of her luggage, and that this fact was relevant to the totality of the circumstances inquiry. *Id.* at 1505.

Next, we examined Little's argument that because she was a woman traveling alone, she would be more easily intimidated than other persons. We held "unless there is evidence that Agent Small knew of any particular personal

traits or characteristics of Ms. Little, and they influenced his conduct, they are irrelevant to the question of whether the encounter between Agent Small and Ms. Little was consensual." *Id.*

We noted that the district court had relied on the fact that "Agent Small was very pointed in his questioning of the defendant, and he was asking incriminating questions." *See id.* We held that "[t]he asking of 'incriminating questions' is irrelevant to the totality of the circumstances surrounding the encounter. Indeed, *Bostick* specifically observed that police officers ask such questions, and in no way suggested that there is anything unlawful in the practice." *Id.* at 1506.

We concluded that "the district court apparently gave determinative weight to both the roomette setting and to the failure to specifically advise Ms. Little that she need not answer questions.... In so doing, the district court ... failed to fully explore the totality of the circumstances surrounding the encounter." *Id.* at 1506. We therefore remanded for the district court to apply the totality of the circumstances test.

court stated that it *"drew on all the facts set forth in the record to reach its conclusion."* *Id.* at 336 (emphasis added).

The judge next concluded that Little's responses to Agent Small's questions regarding the suitcase in the baggage area were tainted by her illegal seizure and thus could not be used to determine whether there was reasonable suspicion to hold the luggage and subject it to a dog sniff. *Id.* On the basis of these findings on remand, the trial judge then granted the motion to suppress.

## III

 "When reviewing an order granting a motion to suppress, 'we accept the trial court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the district court's finding.'" *Little I*, 18 F.3d at 1503, quoting *United States v. Swepston*, 987 F.2d 1510, 1513 (10th Cir.1993). "We are mindful that at a hearing on a motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Fernandez*, 18 F.3d 874, 876 (10th Cir. 1993). However, we review de novo the ultimate determination of Fourth Amendment reasonableness. *Little I*, 18 F.3d at 1503. If the district court's factual findings are based on an erroneous interpretation of law, a remand is appropriate unless the record is such that only one resolution of the factual issue is possible. *Id.*

The government argues that in *Little I* we "ruled that the factors the trial court had relied on to conclude Ms. Little had been seized were of no or only marginal relevance in the calculus of coercion." Appellant's Opening Brief at 7. The government asserts that on remand the trial court "again relied upon the same discredited factors that it had relied upon the first time it considered the issue." *Id.* at 7–8. We reject this assertion,

as we conclude that on remand the district judge carefully considered our holdings in *Little I* and neither improperly relied on irrelevant factors nor gave determinative weight to any one factor.[2] In *Little I* we said that certain factors relied upon by the district court were irrelevant and that the district court appeared to give determinative weight to others, contrary to the totality of the circumstances standard. *See* note 1, *supra*. However, on remand the factors relied on by the district judge were all factors which he could properly consider in determining whether the encounter was consensual.

 First, the judge found that the questioning occurred in a confined space and outside of public view. As noted, the location of the encounter is relevant, although it cannot be determinative. *See Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387 ("Where the encounter takes place is one factor, but it is not the only one.").

 Second, the district judge relied upon the "accusatory, persistent, and intrusive" nature of the questioning by Agent Small. 862 F.Supp. at 335. The government argues that *Little I* precluded the district court from relying on this fact. In *Little I* we held that "[t]he *asking* of 'incriminating questions' is irrelevant to the totality of the circumstances surrounding the encounter." 18 F.3d at 1506 (emphasis added). However, we did not hold that the manner of asking incriminating questions was irrelevant. Nor would it be proper to do so. "Accusatory, persistent, and intrusive" questioning can turn an otherwise voluntary encounter into a coercive one. *See Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387 ("no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—*so long as the officers do not convey a message that compliance with their requests is required."* (Emphasis added.)). Therefore, it was not error for the district judge to find that there

---

2. On remand the district judge stated that he applied the totality of the circumstances test and did not apply a per se rule or give determinative weight to any factor. "The district court surely knows more about the meaning of its own orders than we do, and we are not prepared to second

guess its construction." *G.J.B. & Associates, Inc. v. Singleton*, 913 F.2d 824, 831 (10th Cir.1990). Thus, we reject the government's criticism that "[a]ll the trial court did was to dress-up its original findings, an approach not permitted by the remand." Appellant's Opening Brief at 13.

was an "accusatory, persistent and intrusive nature of the questioning," *Little II,* 862 F.Supp. at 335, and to consider this factor in his analysis of the totality of the circumstances.

■ Finally, the district judge relied upon Agent Small's failure to advise Little that she had the right to refuse to answer questions or to refuse to accompany him to the baggage area. In *Little I,* we stated that there was no per se rule requiring such advisement. 18 F.3d at 1505. We also said that Agent Small's advisement that Little did not have to consent to the search of her bag was relevant. *See Bostick,* 501 U.S. at 432, 111 S.Ct. at 2385 (a "fact[ ] ... particularly worth noting [is that] ... the police specifically advised Bostick that he had the right to refuse consent."). The giving of such advisements is relevant to the inquiry, and it logically follows that the omission of such advisements is also relevant, while not dispositive, in making the finding "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." *Bostick,* 501 U.S. at 439, 111 S.Ct. at 2389.

In sum, all the factors considered by the district judge and set forth in his opinion on remand, 862 F.Supp. at 335, were relevant to the analysis of the totality of the circumstances. The district judge made no error in considering these factors on remand.[3]

**IV**

■ We must next determine whether the district judge's findings of fact on remand were clearly erroneous. In reviewing factual findings we are mindful that

[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. [citations omitted].

*This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.*

*Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) (emphasis added); *see also Willner v. University of Kansas,* 848 F.2d 1023, 1030 (10th Cir.1988) (per curiam) (we cannot reverse a district court simply because we might have decided the case differently), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

■ From the district's court opinion on remand, it is clear that the judge found that (1) the encounter took place in an area outside public view and in a confined space;[4] (2) Agent Small's questioning was "accusatory, persistent, and intrusive" in nature; (3) Agent Small did not advise Ms. Little that

---

3. The government asserts that "[t]he *en banc* opinion [*Little I*], fairly read, implicitly holds that the encounter between Agent Small and Ms. Little was a consensual one." Appellant's Opening Brief at 12. We disagree. In *Little I* we said:

Upon review of the briefs and arguments of the parties, we hold that the district court employed the wrong legal standard when it granted the motion to suppress, in that it held that our prior cases compelled the conclusion that a police-citizen encounter at a train roomette, without a specific advisement by the police officer that the defendant need not answer questions, constituted an unlawful seizure. Our prior cases dictate no such *per se* rule. We therefore *REVERSE and REMAND this case for further proceedings utilizing the proper standard.*

18 F.3d at 1501 (emphasis added).

Our wording and disposition demonstrate that we did not "implicitly" or otherwise hold that the encounter was a consensual one. If we had, there would have been no reason to remand "for further proceedings utilizing the proper standard." On remand the district judge did as we instructed: he reexamined the case before him, applying the proper legal standard set forth in *Bostick* and *Little I* and made new findings on the totality of the circumstances.

4. Where there is a factual dispute as to whether the place of an encounter was public or private in nature, a factual finding by the trial judge is proper, and is reviewable under the clearly erroneous standard. *See United States v. Kim,* 27 F.3d 947, 952 n. 2 (3d Cir.1994), *cert. denied,* ——— U.S. ———, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).

she had the right to refuse to answer his questions; (4) Ms. Little did in fact, after some hesitation, decline to give permission to Agent Small to search the bag in her roomette; and (5) Agent Small failed to advise Ms. Little that she could refuse to accompany him to the baggage area. We have reviewed the record, including the audiotape of the encounter, and conclude that these findings are not clearly erroneous.[5]

▃▃▃ We are persuaded here that the judge's factual finding that when Small asked Little to accompany him to the baggage area to view the second bag, her liberty was restrained, 862 F.Supp. at 335–36, was not clearly erroneous. In determining the ultimate question whether Ms. Little was seized within the meaning of the Fourth Amendment when Agent Small asked her to accompany him to the baggage area, we should remember the background facts as found: that the encounter was in a confined space outside the public view, the questioning was found to be accusatory, persistent and intrusive, Ms. Small was not advised she could refuse to answer the questions, and when asked to accompany Agent Small to the baggage area, she was not told she was under no compulsion to do so. *Little II*, 862 F.Supp. at 335. At the same time, we bear in mind that Agent Small did advise Ms. Little that she need not consent to the search of the bag she had with her in her roomette, and that, after some hesitation, she did in fact refuse consent to search.

In light of all the factors, the district court found that "Ms. Little could reasonably believe that she was not free to ignore Agent Small's requests and go about her business.

At that point in time, Ms. Little's liberty was restrained." *Id.* at 336. We accept that finding. At that point there was no reasonable suspicion to so detain Ms. Little, and her detention then violated the Fourth Amendment. Her responses to any questions after that point were tainted by her illegal detention and could not be used to determine whether there was reasonable suspicion to search the bag, as the district court properly concluded.

## V

▃▃▃ The remaining question then is whether there was reasonable suspicion to hold Ms. Little's bag in the baggage area. We review the question whether there was reasonable suspicion to support an investigatory detention under the clearly erroneous standard, although the ultimate determination of reasonableness under the Fourth Amendment we review de novo. *United States v. Walker*, 941 F.2d 1086, 1090 (10th Cir.1991), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). The government asserts that the "trial court did not reach the reasonable suspicion issue the first time it considered this matter, and did not reach the reasonable suspicion issue on remand." Appellant's Opening Brief at 23. We disagree.

▃▃▃ The district court stated "the responses of Ms. Little to Agent Small's further questioning regarding the second bag were tainted; ... *her responses, therefore, may not be considered in determining the reasonableness of Agent Small's suspicion to detain the luggage....*" *Little II*, 862 F.Supp. at 336 (emphasis added). In the sentence immediately following this quoted

---

5. In reviewing the district judge's findings, we note that the government has argued that this appellate court "is as capable as the trial court in determining whether the questioning was accusatory, persistent and intrusive. This court has listened to the same tape recording the trial court heard.... Under this unusual circumstance, it is unnecessary to afford the trial court the traditional deference appellate courts owe lower courts." Appellant's Opening Brief at 10 n. 2.

The notion suggested by the government has been squarely rejected by the Supreme Court in *Anderson v. City of Bessemer City,* 470 U.S. at 574–75, 105 S.Ct. at 1511–12. The Court there held that the clearly erroneous standard of re-

view applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Id.* at 574, 105 S.Ct. at 1511–12. The Court pointed out that the rationale "for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise...." *Id.* at 574, 105 S.Ct. at 1512. The Court concluded that "review of factual findings under the clearly erroneous standard—with its deference to the trier of fact—is the rule, not the exception." *Id.* at 575, 105 S.Ct. at 1512.

language, the district judge granted the motion to suppress. It is apparent, therefore, that the judge found that the detention of the luggage was not supported by reasonable suspicion. The government is thus incorrect in asserting that the district court did not reach the issue.

The government also argues that based on all the information Small gathered before and during the encounter, there was reasonable suspicion to seize the luggage. Our review of the record convinces us that based on the information available to Agent Small which was not tainted by the illegal detention, the finding that there was no reasonable suspicion to hold the bag was not clearly erroneous. Without reasonable suspicion to hold the bag, we conclude that the search of Ms. Little's bags and the seizure of the cocaine from them was not reasonable under the Fourth Amendment.

We are convinced that the trial judge's findings are not clearly erroneous and that he made no legal error in his analysis on remand. Accordingly, his order granting the motion to suppress is **AFFIRMED.**

ANDERSON, Circuit Judge, dissenting:

There is no dispute about the particular facts of this case, nor is there any dispute about our statements of the applicable law in *United States v. Little*, 18 F.3d 1499 (10th Cir.1994) (in banc). On remand, the district court conducted no new fact findings, but simply reached the identical legal conclusion as before, on the identical facts as before. In affirming that conclusion, the majority has unacceptably minimized its appellate responsibility, has ignored our own case law, and has provided no guidance or meaningful precedent for lower courts, law enforcement personnel, or the travelling public. For those reasons, I respectfully dissent.

## I.

As the majority acknowledges, in reviewing motions to suppress, " 'we accept the trial court's factual findings unless clearly erroneous' " while we "review de novo the 'ultimate determination of Fourth Amendment reasonableness.' " *Id.* at 1503 (quoting *United States v. Swepston*, 987 F.2d 1510, 1513 (10th Cir.1993) and *United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir.1993)).

In granting Ms. Little's motion to suppress, the district court relied on the following well-established facts:

the confined space within which Ms. Little was questioned; the questioning was conducted outside public view; the accusatory, persistent, and intrusive nature of the questioning by Agent Small; and the failure of Agent Small to advise Ms. Little that she had the right to refuse to answer his questions or to refuse to accompany him to the baggage area.

*United States v. Little*, 862 F.Supp. 334, 335 (D.N.M.1994). Two of these factors are but a restatement about the location of the encounter; one factor is but a restatement about the type of questions asked by Agent Small, embellished with a clearly erroneous finding as to the tone and nature of the questioning; and the final factor is a restatement of the failure of Agent Small to specifically advise Ms. Little that she could refuse his requests.

In our in banc opinion in *Little*, we specifically stated that the location of the encounter was not determinative of whether the encounter was consensual or not. *Little*, 18 F.3d at 1504. We also specifically stated that the failure to advise Ms. Little that she need not answer questions was not determinative. *Id.* at 1505. We further held that, in accordance with Supreme Court jurisprudence, police officers are entitled to ask potentially incriminating questions. *Id.* at 1506 (citing *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)).

The district court has done nothing more than, once again, give these factors determinative and controlling weight, while denying that it is doing so. Further, it has reiterated its previous finding that the tone of Agent Small's questioning was coercive, a finding which is clearly erroneous, based upon our own review of the record in this case, including the audio tape of the actual encounter. From those factors, the district court derived the legal conclusion that the Fourth Amendment was violated.

The majority does *not* tell us whether it would reach the same conclusion—that the encounter became nonconsensual—if the same questioning had taken place in a coach car or other more "public" location. If it would not reach the same conclusion, the

majority's holding is clearly location specific, contrary to our in banc opinion in *Little*. If it would reach the same conclusion, and hold that the encounter became nonconsensual, the majority would be flatly inconsistent with *Bostick* and subsequent case law in our own and other circuits.

In my view, the majority has abdicated its appellate review function by summarily affirming the district court's conclusion, giving undue deference to lower court findings when the ultimate issue on appeal is a legal one, which we must review de novo. I would reverse the district court's legal conclusion that the Fourth Amendment was violated when Agent Small asked Ms. Little to accompany him to the baggage area.

Having concluded that there was no Fourth Amendment violation because the encounter between Ms. Little and Agent Small remained consensual, I would then hold that Agent Small had reasonable suspicion to detain Ms. Little's luggage and subject it to a dog sniff. The facts relevant to this issue are fully set forth in our in banc opinion. *Little*, 18 F.3d at 1501–02. The majority now affirms the district court's conclusion that, because Ms. Little had been unlawfully detained, her responses to Agent Small's subsequent questions were tainted and could form no basis for a reasonable suspicion to detain her luggage. The majority therefore affirms the conclusion that Agent Small lacked reasonable suspicion to detain the luggage.

At the time he briefly seized her luggage, Agent Small knew the following: Ms. Little was travelling alone in a private compartment, she had paid cash for a one-way ticket, she was travelling under her own name, she had brought on board a new suitcase with no identification but which she acknowledged was hers, which emitted an unidentified "chemical smell," and the contents of which were unknown to her because she had not packed it but, rather, she was transporting it from Los Angeles to St. Louis for someone else. *Little*, 18 F.3d at 1501–02. While several of these factors are consistent with innocent travel, *see United States v. Hall*, 978 F.2d 616, 621 (10th Cir.1992) and *United*

States v. Bloom, 975 F.2d 1447, 1458 (10th Cir.1992), several are objectively suspicious and support a finding of reasonable suspicion. *See United States v. Carhee*, 27 F.3d 1493, 1498 (10th Cir.1994); *United States v. Manuel*, 992 F.2d 272, 274 (10th Cir.1993); *United States v. Withers*, 972 F.2d 837, 843 (7th Cir.1992); *United States v. Vasquez*, 612 F.2d 1338, 1344 (2d Cir.1979), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980).[1] I would conclude, as a matter of law, that Agent Small's suspicion was reasonable under the Fourth Amendment, *see Bloom*, 975 F.2d at 1456, and that he lawfully briefly detained the luggage for a dog sniff.

II.

I am further troubled by the majority's decision because its deferential review of the district court's conclusion casts doubt upon the consistency with which our court will review subsequent motions to suppress. The majority's deferential standard suggests that a similar result—affirmance of the district court ruling—would occur in a case involving similar facts but a different legal conclusion by the lower court. Thus, one defendant questioned by police on a train may succeed in having evidence suppressed, while a different defendant similarly questioned may fail.

III.

Finally, what makes the majority opinion even more troublesome is that it ultimately provides a precedent for nothing, except another case with identical facts. Its application of the broad legal principles set out in our prior case law to the particular facts of this case parses the Fourth Amendment so finely that nobody, least of all law enforcement officers, will be able to predict what they lawfully can and cannot do. Thus, further confusion and ambiguity have been added to an already difficult area of the law.

For these reasons, I respectfully dissent.

---

1. While we did not reach the question of whether Agent Small had reasonable suspicion to detain Ms. Little's luggage in our in banc *Little* opinion, we did specifically hold that "[a]n unidentified

chemical smell emanating from an unlabelled piece of luggage is not, by itself, sufficient to create reasonable suspicion." *Little*, 18 F.3d at 1506.