**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 3/25/96**

**TENTH CIRCUIT**

———

UNITED STATES OF AMERICA, )
)
    Plaintiff - Appellee, )
) No. 95-3087
v. )
)
WILLIAM HOWARD BRUCE, )
)
    Defendant - Appellant. )

———

Appeal from the United States District Court
for the District of Kansas
(D. Ct. No. 94-100012-01)

———

Submitted on the briefs:

Jeff Griffith, Griffith & Griffith, Derby, Kansas, for Defendant/Appellant.

Randall K. Rathbun, United States Attorney, Montie R. Deer, Assistant United States Attorney, Wichita, Kansas, for Plaintiff/Appellee.

———

Before **SEYMOUR**, **Chief Judge, McKAY**, and **LUCERO**, Circuit Judges.

———

**LUCERO**, Circuit Judge.

———

Convicted of one count of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, and two counts of mailing threatening communications in violation of 18 U.S.C. § 876, William Howard Bruce argues that evidence gathered in connection with his arrest should have been suppressed because FBI agents lacked probable cause to arrest him.[1] Bruce challenges his Hobbs Act conviction on the grounds that Congress lacked power under the Commerce Clause to enact the statute, and that the evidence failed to show that his acts affected interstate commerce. He challenges the application of various Sentencing Guidelines to enhance his sentence, particularly an enhancement for possession of a firearm during commission of the crime of extortion. We affirm.

## I

A person sent two notes to Pizza Hut's world headquarters in Wichita, Kansas, threatening to commit drive-by shootings at Pizza Hut locations if he were not paid $500,000. A company official contacted the FBI. One attempt to apprehend the extortionist, using an agent posing as a Pizza Hut executive, was unsuccessful. After the receipt of a second extortion note, the agents tried again.

The drop site selected by the extortionist in the second note was a remote, rugged, wooded area. At the exact time and place set for payment of the extortion money, agents saw a white male with a beard driving a green Dodge pickup very slowly along the

---

[1] At the parties' request, the case is unanimously ordered submitted without oral argument pursuant to the applicable rules.

highway. Agents knew from a telephone conversation during the first attempt to capture the extortionist that he was a male. The driver stopped and appeared to survey the drop site before driving away. No one appeared that evening to claim the package placed there by the FBI.

Early the next morning, agents observed a green pickup truck approaching the area. Shortly thereafter, the team saw a bearded white male, later identified as Bruce, walking cautiously and deliberately toward the drop site, carrying a camera. It was a very cold day, yet Bruce was lightly dressed. The color of his jacket matched the foliage around him. He appeared to scan the area with the camera's telephoto lens, but was not taking photographs. As he approached the FBI's decoy package, Bruce made eye contact with one of the agents. He froze. Then, he promptly started to snap pictures. When he attempted to leave the site, FBI agents arrested him. On searching his home after the arrest, agents found a case of semi-automatic rifles, pistols, ammunition, and other evidence. Bruce now argues that the federal agents lacked probable cause for the arrest.

When reviewing the denial of a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous, but review *de novo* the ultimate determination of reasonableness under the Fourth Amendment. United States v. Allen, 986 F.2d 1354, 1356 (10th Cir. 1993). Probable cause to arrest exists when officers have knowledge of facts that would "warrant a [person] of reasonable caution in the belief that an offense has

3

been or is being committed." Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979) (quotations omitted).

At the time of the arrest, the facts known to the FBI team would have warranted a person of reasonable caution in the belief that Bruce was attempting to collect the extortion money. Given the remote location and rugged terrain, it was reasonable to believe that only hikers or persons connected with the crime would appear at the drop site. The time he was seen surveying the drop site coincided with that selected by the extortionist for payment. His gender, physical appearance, and vehicle matched those of the person who had surveyed the site the day before. His clothing, inappropriate for the weather but appropriate for blending in with the landscape, combined with the way he walked through the area and used his camera, and with his behavior after making eye contact with an agent, provided probable cause to believe that Bruce was in some way connected to this crime. The district court properly denied the motion to suppress.

## II

Bruce next argues that, under United States v. Lopez, 115 S. Ct. 1624 (1995), Congress lacked Commerce Clause authority to enact the Hobbs Act, 18 U.S.C. § 1951, because the crime of extortion does not substantially affect interstate commerce. A panel of this Circuit has held that § 1951 represents a valid exercise of Commerce Clause power under Lopez. United States v. Bolton, 68 F.3d 396, 398-99 (10th Cir. 1995), cert. denied, 1996 WL 26479 (U.S. Feb. 20, 1996) (No. 95-7440). We agree with the holding of

4

Bolton and are bound by this precedent in any event. See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993), cert. denied 115 S. Ct. 53 (1994).

Bruce also claims that the evidence presented did not demonstrate that his acts affected interstate commerce. To sustain a conviction under the Hobbs Act, the government need show only that the defendant's acts had a *de minimis* effect on interstate commerce. Bolton, 68 F.3d at 399. The first extortion note stated that if Bruce were not paid $500,000, "Pizza Huts *around the country* will be on the receiving end of drive-by shootings and copies of this letter will be sent to the news media." Tr. Trans. at 37 (emphasis added). The letters were sent not to a local restaurant, but to Pizza Hut's headquarters. The letters were addressed to a former CEO of Pizza Hut. Pizza Hut's director of security testified that he interpreted the letters as threatening violent acts at any one of the 5,000 Pizza Hut restaurants in the United States and caused him to consider improving security arrangements around the country. A reasonable jury could conclude from this evidence that the threat was directed at Pizza Hut's business across the nation, and therefore had at least a *de minimis* effect on interstate commerce.

## III

Bruce challenges the district court's application of certain Sentencing Guidelines. In this context, we review the district court's fact findings for clear error and its application of the guidelines *de novo*. United States v. Pelliere, 57 F.3d 936, 940 (10th Cir. 1995).

5

The district court increased Bruce's base offense level by five levels for possession of a firearm during commission of the crime of extortion by force or threat of injury or serious damage. See USSG § 2B3.2(b)(3)(A)(iii). The factual predicate for this enhancement was the presence of several loaded semi-automatic rifles and pistols in his home. Finding no published authority as to the meaning of "possession" in the context of this guideline, the district court reasoned that an enhancement was warranted because these weapons were in Bruce's possession when he threatened drive-by attacks on Pizza Hut restaurants. Bruce maintains that the guidelines contemplate application of this enhancement only when the victim perceives that the perpetrator has a firearm or when law enforcement personnel are placed at risk because of the potential use of the firearm. Because he did not possess firearms at the time he was arrested, and because he could have sent identical extortion letters even if he did not possess any firearms, Bruce argues that the district court misinterpreted the guideline in calculating his sentence.

No cases on this issue appear to have been published since the district court's ruling and we review as a matter of first impression. Because the term "possession" is not defined in the guidelines, we give it its plain meaning. See United States v. Brumby, 23 F.3d 47, 50 (2d Cir.), cert. denied 115 S. Ct. 250 (1994). Possession represents the baseline against which other types of criminal interaction with firearms are measured; one need not brandish, display or use a firearm in any manner in order to possess it. Cf. Bailey v. United States, 116 S. Ct. 501, 506 (1995) (in context of federal firearm laws,

6

"use" means "active employment" and implies something more than "mere possession"). Defendant admitted that he possessed the weapons when he filed for bankruptcy prior to his arrest, and they were in his home when police searched it. The district court's factual finding that Bruce possessed firearms when he wrote the extortion notes is not clearly erroneous.

The Sentencing Commission is clearly aware that extortionate threats are often not made in person; the commentary notes that this guideline applies to convictions for extortion by mail. USSG § 2B3.2, comment. (backg'd.). The guidelines contemplate that this enhancement will apply when a defendant possesses firearms at the time he mails an extortion letter threatening their use. This case demonstrates why such an enhancement is warranted: Bruce's possession of semi-automatic weapons showed that he was prepared to back up his threat if Pizza Hut did not give in to his demands. An empty threat of violence, though still punishable, may reasonably warrant a lesser sentence than a threat made by one apparently well prepared to carry it through. Cf. United States v. Johnson, 965 F.2d 460, 468 (7th Cir. 1992) (calculation of base offense level under USSG § 2B3.2, without enhancement, was appropriate even though defendant arguably did not intend to carry out threatened acts of violence). The district court did not err in enhancing Bruce's sentence under the guideline.

Bruce next argues that the district court improperly enhanced his sentence for making an implied threat of bodily injury, USSG § 2B3.2(b)(1), because his second

extortion note expressly stated that his goal was "not to injure or kill, simply to terrorize until business reflects the effect." However, Bruce made more than one threat. The first note threatened "drive-by shootings" without reservation. It is reasonable to infer a threat of bodily injury from the first note. The enhancement was proper.

The district court also enhanced Bruce's sentence for obstruction of justice under USSG § 3C1.1. Bruce claims this was error because the government made no showing that he actually interfered with the administration of justice. Testimony introduced at sentencing indicated that Bruce had passed a third extortion letter to a person who turned out to be a government informant. He instructed the informant to type the handwritten letter and mail it to Pizza Hut from outside the jail, apparently hoping to persuade authorities that someone else was the perpetrator. An FBI handwriting expert confirmed that Bruce wrote the letter.

The guideline permits enhancement when the defendant "*attempted* to obstruct or impede . . . the administration of justice." USSG § 3C1.1 (emphasis added). Whether anyone was actually misled by such an attempt is not relevant. The district court's factual finding that Bruce attempted to obstruct justice by creating the appearance that someone else was responsible for the crime was not clearly erroneous, and the court correctly interpreted and applied the guideline.

Finally, Bruce claims ineffective assistance of counsel. We will entertain such claims on direct review only in rare cases where the record on the issue is fully

8

developed.  <u>United States v. Galloway</u>, 56 F.3d 1239, 1242 (10th Cir. 1995) (en banc).

This is not such a case.  Accordingly, we express no opinion on the issue.

AFFIRMED.