**UNITED STATES COURT OF APPEALS**

**Filed 8/16/96**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MARCOS MANUEL BOJORQUEZ-
GASTELUM,

     Defendant - Appellant.

No. 96-1004
(D.C. No. 95-CR-222)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **KELLY** and **LUCERO**, Circuit Judges.


After entering a conditional plea of guilty to a charge of illegally reentering the

United States after deportation for an aggravated felony, see 8 U.S.C. § 1326, defendant

Marcos Manuel Bojorquez-Gastelum appeals the denial of his motion to suppress

evidence obtained after an encounter with police at Denver International Airport (DIA).

The encounter resulted in the arrest of Bojorquez on drug charges, which were later

dropped. Defendant argued below that his encounter with police officers at DIA was a

---

[*]The case is unanimously ordered submitted without oral argument pursuant to the applicable rules. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

seizure unsupported by reasonable suspicion, that the officers lacked probable cause to arrest him, and that evidence of his identity and criminal record were tainted by the illegal detention. The district court denied his motion to suppress, holding that the encounter prior to the arrest was consensual, and that probable cause supported the arrest. We agree and affirm.

## I.

Reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accepting the district court's factual findings if not clearly erroneous; if the Fourth Amendment is implicated by the encounter in question, we review the ultimate question of reasonableness de novo. United States v. Alarcon-Gonzalez, 73 F.3d 289, 291 (10th Cir. 1996). A person is not seized within the meaning of the Fourth Amendment "simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 434 (1991). An encounter with police is consensual if a reasonable person would have felt "free 'to disregard the police and go about his business.'" Id. (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)). The test as to whether a seizure has occurred requires that we evaluate the totality of the circumstances; only rarely will a single factor be determinative. United States v. Little, 18 F.3d 1499, 1503-04 (10th Cir. 1994) (en banc). Our inquiry is focused on whether the police used "physical force or show of authority" to restrain a person's liberty. Immigration and Naturalization Serv. v. Delgado, 466 U.S. 210, 215 (1984)

(quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n. 16 (1968)). Defendant argues that he was seized during his initial encounter with police on a DIA train platform, or later when he was taken to the Narcotics Unit Office. We examine these contentions in turn.

**A.**

On the date of the events in question, Detective Petersohn of the Denver Police Department and Special Agent Sanchez of the Drug Enforcement Administration (DEA) were working on narcotics interdiction detail at DIA. The officers wore casual civilian clothes. The officers observed defendant as he left the jetway, apparently arriving in Denver on a direct flight from Los Angeles. Defendant briefly made eye contact with Detective Petersohn, and then rapidly looked away. He then walked to the center of the concourse area and met with another passenger from the same flight.

Arriving passengers at DIA must board an underground train to proceed to the main terminal. Bojorquez and his companion looked back toward the area where the police officers stood, then proceeded quickly to the train platform. This behavior increased the officers' interest in defendant and his companion's activity, so the officers followed the pair down the escalator to the platform. Defendant made eye contact with the officers again as he traveled down the escalator and as he reached the train platform. He proceeded quickly to the doorway; Petersohn interpreted his behavior as an attempt to hide. The officers introduced themselves to Bojorquez and showed him police identification, but made no other display of authority. They proceeded to question

defendant and his companion about their identity and itinerary, and received apparently truthful answers. Petersohn briefly held the driver's license Bojorquez presented, but returned it to him. As the train arrived, Petersohn asked if the pair would accompany them to the Narcotics Unit Office at DIA, and they agreed to do so. The officers did not inform defendant or his companion that they were free to decline their request.

Defendant argues that the circumstances of this encounter were so intimidating as to constitute a seizure, relying primarily on Alarcon-Gonzalez, 73 F.3d at 292, and United States v. Little, 60 F.3d 708, 713-14 (10th Cir. 1995) ("Little III"). In Alarcon-Gonzalez, the defendant was seized when "four to eight armed and uniformed police officers and INS agents" approached him and ordered his companion to "freeze," thus implying that force would be used if the command was not obeyed. 73 F.3d at 292. In Little III, the defendant was seized when she was subjected to "accusatory, persistent, and intrusive" questioning in a confined, private area and was asked to accompany officers to the baggage area of the train after having declined to permit officers to search baggage in her train compartment. 60 F.3d at 713-14.

Nothing nearly as intimidating occurred here. The police approached Bojorquez and his companion in an open, public area, displayed police identification, and asked a few questions. There is no evidence that the officers used an accusatory or threatening tone, displayed weapons, or commanded defendant or his companion to do anything. Although the officers did briefly examine defendant's driver's license, they promptly

returned it to him. See United States v. Houston, 21 F.3d 1035, 1037 (10th Cir. 1994) (officer's brief examination and return of train ticket did not convert consensual encounter into seizure). The failure of the officers to inform defendant of his right to refuse to cooperate is certainly relevant to our inquiry, Little III, 60 F.3d at 713, but under the circumstances of this case we do not agree that this failure converted an otherwise consensual encounter into a seizure.

**B.**

After boarding the train, the officers, defendant, and his companion proceeded to DIA's Concourse A, site of the Narcotics Unit Office. The trip to the office lasted three to five minutes. The office itself is small and contains several desks; the district court found that there was not much room for a person to walk around in it. Upon arriving at the office, the police did not cause defendant to wait. Instead, they immediately asked permission to search his and his companion's luggage, and consent was given.

There was no evidence that other officers were present in the office when defendant and his companion were brought there. Although defendant characterizes the officers' presence as "pointed" and "authoritative," Appellant's Brief at 14, the district court did not so find and there is no evidence in the record that the officers became more intimidating or threatening when they moved to the office. The only additional factor supporting a finding that a seizure took place was the fact that defendant was brought into a cramped police office. This fact is relevant to the evaluation as to whether a person was

seized, but cannot be dispositive. <u>Bostick</u>, 501 U.S. at 439. This is a closer case than <u>Bostick</u>, because the police have control over the size of their office, while the cramped nature of the bus in <u>Bostick</u> was not due to any police act. <u>Id</u>. at 436. Nevertheless, <u>Bostick</u> cautions us not to place dispositive weight on the location of the encounter, even if the police exercise a great degree of control over the characteristics of that location. <u>See id</u>. In the absence of evidence that the officers took any affirmative act to restrict defendant's movement or indicate that he was not free to leave, <u>see</u> <u>Delgado</u>, 466 U.S. at 218, we agree with the district court that the questioning of defendant and his companion in the Narcotics Unit Office was consensual.

**II.**

In the Narcotics Unit Office, the police asked defendant and his companion whether the bags they carried belonged to them. The defendant told the officers that the bag he was carrying was his only piece of luggage, while his companion indicated that the duffel bag he carried belonged to both of them. Both parties consented to a search of the bags. The search of the bag possessed by defendant turned up nothing of interest, while his companion's duffel bag was found to contain approximately 800 grams of cocaine. Although the companion stated that defendant had nothing to do with the cocaine, both were arrested and booked on drug charges. Running defendant's fingerprints through a computer data bank after the arrest, police learned that he had used an alias when answering the officers' questions and that he was actually a non-citizen who had been

deported after commission of a felony. Bojorquez now argues that his arrest was not supported by probable cause.

"Probable cause to arrest exists when officers have knowledge of facts that would warrant a person of reasonable caution in the belief that an offense has been or is being committed." United States v. Bruce, 78 F.3d 1506, 1508 (10th Cir. 1996) (quotation and internal brackets omitted), pet. for cert. filed, __ U.S.L.W. ____ (U.S. June 20, 1996) (No. 95-9389). Probable cause to arrest a specific individual exists when the facts known to the police lead them reasonably to believe that the person is involved with the crime. Id. Here, the police knew that Bojorquez and his companion were traveling together. They witnessed him pointing the officers out to his companion before the pair proceeded to the train platform, and continuing to observe their movements as he rode the escalator to the platform. Although it is true that, at that point, defendant did not know that the persons observing him were police officers, a person of reasonable caution can believe that a drug courier might be concerned about surveillance by persons other than police officers. Most significantly, the drugs were found in a bag that defendant's companion had indicated belonged to both of them. Under these circumstances, the police had probable cause to believe that Bojorquez was involved in the transportation of that

cocaine.  The district court properly denied the motion to suppress.

AFFIRMED.  The mandate shall issue forthwith.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge